IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DREW ZOLDAK,                                )
                                            )
       Plaintiff,                           )
                                            )
v.                                          )    Civ. A. No. 17-513
                                            )    Judge Nora Barry Fischer
                                            )
BOROUGH OF PLUM, PENNSYLVANIA,              )
BOROUGH OF PLUM POLICE                      )
DEPARTMENT, JEFF ARMSTRONG,                 )
CHIEF OF PLUM BOROUGH POLICE                )
DEPARTMENT, LIEUTENANT LANNY                )
CONLEY, DETECTIVE MARK E.                   )
FOCARETA and OFFICER JOSEPH LITTLE,         )
                                            )
       Defendants.                          )

## MEMORANDUM OPINION

I.    INTRODUCTION

This is a civil rights action under 42 U.S.C. § 1983 arising from charges brought against Plaintiff Drew Zoldak (hereinafter "Plaintiff"), a Plum Borough High School teacher, for intimidating a high school student, Jane Doe, who was set to testify against Joseph Ruggieri, another high school teacher. Presently before the Court is a Motion for Summary Judgment filed by Defendants Borough of Plum, Pennsylvania; Borough of Plum Police Department; Jeff Armstrong, Chief of Plum Borough Police Department; Lieutenant Lanny Conley; Detective Mark E. Focareta; and Officer Joseph Little (hereinafter "Defendants"), (Docket Nos. 51-54); Plaintiff's opposition thereto, (Docket Nos. 55-57); Defendants' reply thereto, (Docket Nos. 58-59); and Plaintiff's sur-reply, (Docket No. 60). The matter is fully briefed, and the Court heard oral argument. Having considered the parties' positions and having evaluated the evidence in light of

the appropriate standard governing motions for summary judgment, for the following reasons, Defendants' Motion for Summary /judgment is granted.

II.	FACTUAL BACKGROUND

In early 2015, the Borough of Plum Police Department initiated an investigation into an inappropriate relationship between a Plum Borough High School female student and Jason Cooper, a teacher at the high school. (Docket No. 55 ¶ 13). Following the investigation, Cooper was charged with institutional sexual assault. (*Id.* ¶ 14). During the course of its investigation, the police became aware that a second teacher, Joseph Ruggieri, was rumored to be in a relationship with Jane Doe. (*Id.* ¶ 15). On February 17, 2015, Ruggieri, was also charged with institutional sexual assault. (*Id.* ¶ 16).

During the week of April 13, 2015, Doe advised Plaintiff, her Forensics teacher, that she would be missing school to go on a college visit and asked Plaintiff to give her the assignments in advance. (*Id.* ¶¶ 17, 18). Another student overheard their conversation and asked whether Plaintiff could do the same for him as he too would be missing class. (*Id.* ¶ 18). Plaintiff advised Doe that the topic on those days would be sexual assault and asked whether she would be "okay" with that. (*Id.* ¶ 19). Plaintiff asked loudly enough for the second student to overhear their conversation. (*Id.*)

On Friday, April 17, 2015, Plaintiff missed Forensics class because the Allegheny County District Attorney's Office was interviewing him concerning his knowledge of Cooper and Ruggieri's sexual misconduct. (*Id.* ¶ 20). When he returned to class on Monday, April 20, 2015, his students asked him where he had been. (*Id.* ¶ 21). Plaintiff told them that he was not at Friday's class because he was being questioned by detectives concerning the investigation into the sexual misconduct allegations at their high school. (*Id.* ¶ 22).

Later that same day, Plaintiff and her mother met with Detective Focareta to discuss the Ruggieri case. (*Id.* ¶ 23). According to Detective Focareta, Doe was visibly upset as she sat down, so he asked her whether something has happened at school. (*Id.* ¶¶ 27, 30).[1] According to Detective Focareta, Doe responded that Plaintiff had asked her whether she was comfortable with the next unit on sexual assault in front of another student and had told the class that he had missed the last class because of the police's investigation into one of the school's teachers while nodding his head in the direction of Cooper's classroom saying "because of him" and pointing in Doe's direction while saying "because of her". (*Id.* ¶¶ 35- 40). Doe told Focareta that having her classmates know that she was a victim was one of her biggest fears. (*Id.* ¶ 41).

Believing a crime had been committed, Detective Focareta and Officer Joseph Little, a school resource officer employed by Plum Borough, interviewed students in Plaintiff's Forensics' class who were at least eighteen years of age. (*Id.* ¶¶ 48-49). On April 21, 2015, five students, Nick Poprocky, Jessica Barker, David Stonebreaker, Samantha Hanno, and Danielle Sellers told the officers that they could not recall Plaintiff doing or saying anything out of the ordinary in class the day before. (*Id.* ¶¶ 55, 59, 60, 63-64). However, four other students recalled Plaintiff explaining the reason for his absence but did not remember him saying or doing anything further. Specifically, Hoener Alexander explained Plaintiff addressed the entire class and stated that he was questioned by detectives on Friday. (*Id.* ¶ 56). Ashley Alpino remembered that Plaintiff told the class that he had been called down to the District Attorney's Office concerning "all of the stuff going on" but could not recall him saying or doing anything else out of the ordinary. (*Id.* ¶ 57). Nathan Polacek expressed that at the beginning of class, Plaintiff informed the class that he had

---

[1] Plaintiff raises hearsay objections to Detective Focareta's retelling of his conversation with what Doe told him occurred in Plaintiff's classroom. However, Plaintiff must prove that his arrest was not based on probable cause, and "[p]robable cause may rest upon hearsay, provided there exists a substantial basis for crediting the hearsay." *Torres v. City of Philadelphia*, 673 F. App'x 233, 236 n.3 (3d Cir. Dec. 21, 2016).

been "deposed by the DA about cases with teachers." (*Id.* ¶ 58). Polacek stated that he knew that Plaintiff was referring to Doe and her relationship with one of the teachers. (*Id.*) Similarly, Brendan Sante recalled Plaintiff, at the beginning of class, saying that he was questioned by two DA's and Sante explained that he knew the investigation concerned Doe. (*Id.* ¶ 62).

Finally, Haley Pilston, who sat next to Doe in Forensics, recalled Plaintiff telling the class that he had been "questioned by detectives" and that he had pointed at a student when another student had asked why he was being questioned but she could not recall to whom Plaintiff pointed. (*Id.* ¶ 61; Docket No. 56-2 at 10). Thereafter, Detective Focareta contacted Investigator Lyle Graber and informed him that some of the students had partially corroborated Doe's story and one had fully corroborated it. (Docket No. 55 ¶¶ 45, 66).

On April 21, 2015, Investigator Graber emailed Detective Focareta attaching a draft affidavit of probable cause stating as follows: "I had some time to start a draft affidavit based on some suggestions from Law. Please add/correct/modify as you fit, then email me back the finalized draft. Law wants me to send it to him for review before you file charges." (*Id.* ¶ 67). Later that day, Detective Focareta emailed Investigator Graber explaining, in relevant part, "Here is the draft with the standard intimidation charges (same that we charged for Ruggieri and Cooper) that can be amended to the correct statute at the prelim. I could not use 901 because it requires you to choose the attempted crime[,] which I obviously can't do because it is in ASAP." (*Id.* ¶ 75).

On April 22, 2015, Detective Focareta prepared the following affidavit of probable cause, which he presented to the magistrate:

> Your affiant, Mark E. Focareta, is a law enforcement officer of the Commonwealth of Pennsylvania as defined in Section 5702 of the Pennsylvania Crimes Code and, as such, I am empowered to make arrests for criminal offenses enumerated therein. I have a total of 21 years law enforcement experience and have been a Plum

4

Borough police officer since April, 1998. I was assigned to the criminal investigations division in October, 2001. I have undergone specialized training in multiple fields relating to Sexual Assault and Crimes Against Children. This training was obtained through the Federal Bureau of Investigations (FBI), the Pennsylvania State Police, the Office of the State Attorney General and the Allegheny County District Attorney's Office. As a police officer I have conducted numerous investigations that have led to the arrest and conviction of individuals responsible for all manners of sex assault and abuse of children. Based on this training and experience your affiant is familiar with the aforementioned crimes, the manner in which they are carried out and the methods used by criminals to conceal their actions.

On April 20, 2015, Victim 1 met with your affiant at the Plum Police Department. Your affiant knows the identity of and has spoken with Victim 1 on multiple occasions regarding an alleged Institutional Sexual Assault against Victim 1 by Plum High School teacher Joseph Ruggieri. As a result of that investigation, Ruggieri has since been arrested and charged with Institutional Sexual Assault and related offenses. A preliminary hearing on these charges is currently scheduled for April 29, 2015. After this initial arrest, additional charges were filed against Ruggieri for allegedly contacting Victim 1 and attempting to obstruct, impede, impair, interfere with or otherwise intimidate Victim 1.

Victim 1 stated that during her 3rd period Plum High School Forensics class on April 20, 2015, Plum High School teacher Drew Zoldak openly stated to his class: 'The reason I wasn't here on Friday is because two men in suits from the District Attorney's Office were asking me hundreds of questions." When asked by a student why he was questioned, Zoldak replied in part by saying "because of her", and pointed directly at Victim 1, who was seated in the classroom. Zoldak then called Victim 1 to his desk in front of the entire class and asked her if she would be okay regarding next week's topic, which was "sexual assault."

Your affiant confirmed that Zoldak had, in fact, been interviewed on Friday, April 17, 2015 by two detectives from the Allegheny County District Attorney's Office. Zoldak, in statements made to his Plum High School class students on April 20, 2015, misrepresented that said detectives were "two men in suits", when in fact he was interviewed by two female detectives. Your affiant further learned from detectives at the Allegheny County District Attorney's Office that the interview date, time and location had been requested by Zoldak. During this April 17, 2015 interview, (which related in part to the alleged Institutional Sexual Assault incident between Victim 1 and fellow Plum High School teacher Ruggieri) Zoldak implied to the detectives that the victim was partly responsible for the offense, stating: "it takes two to tango". Your affiant was also advised by District Attorney's Office detectives that at no time during Zoldak's interview did the two female detectives identify Victim 1 by name. At the time of Zoldak's disclosure to the classroom, Victim 1's name had not been made public in any public forum or charging document.

> Your affiant is aware that Allegheny County Court of Common Pleas Judge Edward J. Borkowski has previously issued a No Contact Order for Victim 1 in the current criminal case against defendant Ruggieri, directing that neither the defendant, nor anyone on behalf of the defendant, intimidate or contact Victim 1.
>
> Your affiant avers that Zoldak's actions — committed while employed as a teacher instructing a public high school classroom containing multiple students - jeopardized the safety and well-being of Victim 1 by publicly pointing to her and identifying her as the victim of an alleged sexual assault, thereby exposing her to taunts, ridicule, intimidation, threats or physical harm by not only these students, but any others with whom these students are now able to share this information. Your affiant avers that Zoldak expressed his views and opinions of Victim 1's actions (related to the alleged Institutional Sexual Assault charges pending against co-worker Ruggieri) during his interview with District Attorney's Office detectives, Your affiant avers that Zoldak's views, as expressed to those detectives, along with the statements and actions made by Zoldak to Victim 1 and a classroom of her peers, reflect an attempt by Zoldak to subject Victim 1 to intimidation.
>
> Based upon the provisions as enumerated within Section 509(3) under the Pennsylvania Rules of Criminal Procedure, your affiant respectfully requests that a warrant of arrest be issued.

(*Id.* ¶¶ 76-77).

On April 22, 2015, Plaintiff was criminally charged with two counts of violating 18 PA. CON. STAT. ANN. § 4952(a), Intimidation of Witnesses or Victims. (*Id.* ¶¶ 1, 82). The first count stemmed from Plaintiff's statements to his Forensics class concerning the investigation and his pointing out Doe. (*Id.* ¶ 82). The second count was related to Plaintiff asking Doe in the presence of others if she would be "okay" with the next unit on sexual assault. (*Id.*)

On April 22, 2015, a magistrate judge issued an arrest warrant for Plaintiff. (*Id.* ¶ 84). Detective Focareta, Lieutenant Conley, and Officer Little were present during Plaintiff's arrest on April 22, 2015, at the high school. (*Id.* ¶¶ 92, 99). Prior to arresting Plaintiff, Detective Focareta and Lieutenant Conley met with Officer Little and the school superintendent. (*Id.* ¶ 92). The police asked the superintendent where they could find Plaintiff. (*Id.* ¶ 93). The superintendent asked if he might be allowed to bring Plaintiff to the officers, but the police denied that request.

(*Id.* ¶¶ 94-95). Plaintiff was alone in his classroom during a "prep period" when the superintendent and the three police officers arrived. (*Id.* ¶ 98). The police walked him out between periods. (*Id.* ¶ 101).

On May 27, 2015, Plaintiff's preliminary hearing was held. (*Id.* ¶ 110). Doe was the only witness who testified. (*Id.* ¶ 111). Magistrate Linda Zucco held both charges of witness intimidation over for trial. (*Id.* ¶ 112). Following the transfer of the charges to the Criminal Division of the Court of Common Pleas of Allegheny County, Plaintiff filed a Petition for *Habeas Corpus*. (*Id.* ¶ 113). Judge David Cashman denied the petition. (*Id.* ¶ 115). Following a jury trial, Plaintiff was acquitted. (*Id.* ¶ 116).

III.   RELEVANT PROCEDURAL HISTORY

In his Amended Complaint, Plaintiff asserts a section 1983 action against Defendants for violating his Fourth and Fourteenth Amendment rights. (Docket No. 18). Specifically, Plaintiff avers that: Detective Focareta, with the full knowledge and support of Chief Armstrong and Lieutenant Conley, falsified information in Plaintiff's Affidavit of Probable Cause and/or with reckless disregard for the truth, made statements and omitted facts that were material to a finding of probable cause; Chief Armstrong was aware of the decision to charge Plaintiff and either encouraged the charges or silently acquiesced to them; Chief Armstrong and Lieutenant Conley had actual knowledge and acquiesced and condoned the charging of Plaintiff in the face of police reports and an investigation that indicated that the criminal allegations made by Doe were false and unsupported by a single eyewitness; Chief Armstrong and the Borough of Plum failed to adequately train and supervise Detective Focareta; and Plum Borough had a custom or policy in

place that violated *Monell v. Department of Social Services of the City of New York*.[2] (*Id.* ¶¶ 130, 142, 144, 161-63).

Defendants moved to dismiss the Amended Complaint. (Docket No. 20). After their Motion to Dismiss was denied without prejudice, Defendants filed an Answer and the case proceeded through discovery. (Docket Nos. 26, 28). After discovery closed, Defendants filed a motion for summary judgment, a brief in support thereof, and a concise statement of material facts and supporting exhibits. (Docket Nos. 51-54). Plaintiff responded with a brief in opposition and a response to Defendants' statement of material facts with supporting exhibits. (Docket Nos. 55-57). Defendants filed a reply brief and supporting exhibits, (Docket Nos. 58-59), and Plaintiff filed a surreply, (Docket No. 60). The Court held oral argument on September 13, 2018, ordering a transcript filed by October 10, 2018. Neither party requested supplemental briefing. The matter is now ripe for disposition.

IV. LEGAL STANDARD

Summary judgment shall be granted where there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To withstand summary judgment, an issue of fact in dispute must be both genuine and material, i.e., one upon which a reasonable factfinder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the court may not weigh the evidence or make credibility determinations, but rather is limited to deciding whether there are any disputed issues that are both genuine and material. *Id.* at 249, 253.

---

[2] *Monell. v. Dep't of Social Serv.*, 436 U.S. 658 (1978).

If the moving party carries its burden under Rule 56, the non-movant must identify "specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive summary judgment. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). The non-movant must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the nonmoving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998) (citation omitted).

V. DISCUSSION

Defendants seek summary judgment on Plaintiff's section 1983 claims alleging violations of his Fourth and Fourteenth Amendment rights due to an unlawful arrest. Plaintiff naturally opposes arguing that the claims should proceed to trial. After careful consideration of the parties' arguments and a review of the record, the Court holds that no reasonable jury could find facts that would lead to the conclusion that the reconstructed affidavit lacked probable cause. Further, Defendants are shielded from liability on the basis of qualified immunity.

Section 1983 serves as a means of vindicating violations of federal constitutional and statutory rights and provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

42 U.S.C. § 1983. A plaintiff cannot obtain redress under § 1983 without establishing an underlying violation of a federal constitutional or statutory right. *City of Rancho Palos Verdes,*

*Cal. v. Abrams*, 544 U.S. 113, 119-20 (2005). Here, Plaintiff alleges his Fourth and Fourteenth Amendment rights were violated by his unlawful arrest.

    A.    *Unlawful Arrest*

Plaintiff first contends that his arrest was unlawful because Detective Focareta, in reckless disregard for the truth, omitted facts material to a finding of probable cause from the Affidavit of Probable Cause and/or falsified information in the Affidavit of Probable Cause. (Docket No. 57 at 7). Specifically, Plaintiff contends that the affidavit omitted ten witness statements that challenged Doe's credibility. (*Id.* at 7-8). Defendants contend that probable cause existed regardless of whether the statements were included in the affidavit or not. (Docket No. 54 at 14). Even assuming for the sake of argument that the statements of other students were intentionally and/or recklessly omitted from the criminal complaint, Plaintiff's claim still fails as the omitted statements were not material or necessary to a finding of probable cause.

The Court of Appeals for the Third Circuit recently addressed how courts should conduct a probable cause analysis at the summary judgment stage. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016). In determining whether summary judgment should be granted, courts review:

> *all* . . . facts and assess whether any reasonable jury could conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a "fair probability" that a crime occurred. Only then would the existence of conflicting evidence rise to the level of a "genuine dispute as to any material fact" such that summary judgment would be inappropriate. Thus, where the question is one of probable cause, the summary judgment standard must tolerate conflicting evidence to the extent it is permitted by the probable cause standard.

*Id.*

Even where a warrant has been obtained, a seizure may be unlawful if the defendant has made false statements or omissions that created a falsehood in applying for the warrant; defendant

made those false statements or omissions either knowingly and deliberately or with a reckless disregard for the truth; and the false statements or omissions were material, or necessary, to the finding of probable cause for the arrest warrant. *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016). "To determine the materiality of the misstatements and omissions," the Court must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000).

Pursuant to *Dempsey*, 834 F.3d at 470 n.8, this Court reconstructs the affidavit at issue in light of the "missing" averments as follows:

> Your affiant, Mark E. Focareta, is a law enforcement officer of the Commonwealth of Pennsylvania as defined in Section 5702 of the Pennsylvania Crimes Code and, as such, I am empowered to make arrests for criminal offenses enumerated therein. I have a total of 21 years law enforcement experience and have been a Plum Borough police officer since April, 1998. I was assigned to the criminal investigations division in October, 2001. I have undergone specialized training in multiple fields relating to Sexual Assault and Crimes Against Children. This training was obtained through the Federal Bureau of Investigations (FBI), the Pennsylvania State Police, the Office of the State Attorney General and the Allegheny County District Attorney's Office. As a police officer I have conducted numerous investigations that have led to the arrest and conviction of individuals responsible for all manners of sex assault and abuse of children. Based on this training and experience your affiant is familiar with the aforementioned crimes, the manner in which they are carried out and the methods used by criminals to conceal their actions.
>
> On April 20, 2015, Victim 1 met with your affiant at the Plum Police Department. Your affiant knows the identity of and has spoken with Victim 1 on multiple occasions regarding an alleged Institutional Sexual Assault against Victim 1 by Plum High School teacher Joseph Ruggieri. As a result of that investigation, Ruggieri has since been arrested and charged with Institutional Sexual Assault and related offenses. A preliminary hearing on these charges is currently scheduled for April 29, 2015. After this initial arrest, additional charges were filed against Ruggieri for allegedly contacting Victim 1 and attempting to obstruct, impede, impair, interfere with or otherwise intimidate Victim 1.
>
> Victim 1 stated that during her 3rd period Plum High School Forensics class on April 20, 2015, Plum High School teacher Drew Zoldak openly stated to his class:

11

'The reason I wasn't here on Friday is because two men in suits from the District Attorney's Office were asking me hundreds of questions." When asked by a student why he was questioned, Zoldak replied in part by saying "because of her", and pointed directly at Victim 1, who was seated in the classroom. Zoldak then called Victim 1 to his desk in front of the entire class and asked her if she would be okay regarding next week's topic, which was "sexual assault."

[**There were other students in the classroom during the relevant time and affiant interviewed those who were at least eighteen years of age on April 21, 2015. Nick Poprocky was interviewed and stated he did not hear Plaintiff make any statements regarding where he was the previous Friday. He did not witness Plaintiff call any students to the front of the class. Hoener Alexander stated that at the beginning of class, Plaintiff addressed the entire class and stated that on Friday, he was questioned by detectives. Alexander did not recall Plaintiff calling any students to the front of the class. Ashley Alpino stated that at the beginning of class, Plaintiff asserted that he was called down to the DA's office about "all of the stuff going on." She said that Plaintiff made the announcement to the entire class. She did not recall him saying or doing anything else out of the ordinary that day. Nathan Polacek was interviewed. Polacek stated that at the beginning of class, Plaintiff said he had missed class because he was "being deposed by the DA about cases with teachers." Polacek stated that he knew that Plaintiff was referring to Doe and her relationship with one of the teachers. Jessica Barker did not recall Plaintiff doing or saying anything out of the ordinary in class. David Stonebreaker did not hear or see Plaintiff do anything out of the ordinary. Haley Pilston recalled Plaintiff stating that on Friday, he was "being questioned by detectives" at the beginning of class. She stated that he made the statement to the entire class. She also remembers him pointing to a student in class when another student asked what he was being questioned about. She was not sure as to which student Plaintiff had pointed. Brendan Sante recalled that at the beginning of class, Plaintiff stated that he was "being questioned by two DAs." Sante knew that it was about Doe. Samantha Hanno did not recall anything unusual about class. Danielle Sellers not recall anything unusual.**]

Your affiant confirmed that Zoldak had, in fact, been interviewed on Friday, April 17, 2015 by two detectives from the Allegheny County District Attorney's Office. Zoldak, in statements made to his Plum High School class students on April 20, 2015, misrepresented that said detectives were "two men in suits", when in fact he was interviewed by two female detectives. Your affiant further learned from detectives at the Allegheny County District Attorney's Office that the interview date, time and location had been requested by Zoldak. During this April 17, 2015 interview, (which related in part to the alleged Institutional Sexual Assault incident between Victim 1 and fellow Plum High School teacher Ruggieri) Zoldak implied to the detectives that the victim was partly responsible for the offense, stating: "it takes two to tango". Your affiant was also advised by District Attorney's Office detectives that at no time during Zoldak's interview did the two female detectives

identify Victim 1 by name. At the time of Zoldak's disclosure to the classroom, Victim 1's name had not been made public in any public forum or charging document.

Your affiant is aware that Allegheny County Court of Common Pleas Judge Edward J. Borkowski has previously issued a No Contact Order for Victim 1 in the current criminal case against defendant Ruggieri, directing that neither the defendant, nor anyone on behalf of the defendant, intimidate or contact Victim 1.

Your affiant avers that Zoldak's actions — committed while employed as a teacher instructing a public high school classroom containing multiple students - jeopardized the safety and well-being of Victim 1 by publicly pointing to her and identifying her as the victim of an alleged sexual assault, thereby exposing her to taunts, ridicule, intimidation, threats or physical harm by not only these students, but any others with whom these students are now able to share this information. Your affiant avers that Zoldak expressed his views and opinions of Victim 1's actions (related to the alleged Institutional Sexual Assault charges pending against co-worker Ruggieri) during his interview with District Attorney's Office detectives, Your affiant avers that Zoldak's views, as expressed to those detectives, along with the statements and actions made by Zoldak to Victim 1 and a classroom of her peers, reflect an attempt by Zoldak to subject Victim 1 to intimidation.

Based upon the provisions as enumerated within Section 509(3) under the Pennsylvania Rules of Criminal Procedure, your affiant respectfully requests that a warrant of arrest be issued.

(Docket No. 55 ¶ 77) (with additions from the Parties' Concise Statement of Material Fact). In this Court's estimation, no reasonable jury could conclude that the reconstructed affidavit lacked probable cause for the following reasons.

The reconstructed affidavit is assessed in light of the standard for probable cause and the elements of 18 PA. CON. STAT. ANN. § 4952(a), Intimidation of Witnesses or Victims. "Because probable cause exists where there is merely a 'fair probability' that the arrestee committed a crime, we need not identify 'the same type of specific evidence of each element of [an] offense as would be needed to support a conviction.'" *Dempsey*, 834 F.3d at 477 (alteration in original) (quoting *Adams v. Williams*, 407 U.S. 143, 149 (1972)). "[S]tatements of a victim witness *are typically sufficient* to establish probable cause in the absence of '[i]ndependent exculpatory evidence or

substantial evidence of [a] witness's own unreliability' that 'outweigh[s]' the probable cause that otherwise exists." *Id.* at 477-78 (citing *Wilson*, 212 F.3d at 790) (alterations in original but emphasis added). However, "[a]n officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." *Goodwin*, 836 F.3d at 328 (quoting *Wilson*, 212 F.3d at 790) (alteration in original).

Under Pennsylvania law,

> A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:
> (1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.
> (2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.
> (3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.
> (4) Give any false or misleading information or testimony or refrain from giving any testimony, information, document or thing, relating to the commission of a crime, to an attorney representing a criminal defendant.
> (5) Elude, evade or ignore any request to appear or legal process summoning him to appear to testify or supply evidence.
> (6) Absent himself from any proceeding or investigation to which he has been legally summoned.

18 PA. CON. STAT. ANN. § 4952(a). Actual intimidation is not required; rather, "[t]he crime is committed if one, with the necessary mens rea, attempts to intimidate a witness." ELEANOR L. GROSSMAN, § 19:45 INTIMIDATION OF WITNESSES AND VICTIMS, 5 Summ. Pa. Jur. 2d Criminal Law § 19:45 (2d ed. 2018). "[I]ntimidation may be accomplished with no words at all, for a mere look or posture can bully, threaten, coerce, frighten, or intimidate beyond question." *Commw. v. Doughty*, 126 A.3d 951, 957 (Pa. 2015). Even rap song lyrics have been found sufficient to

14

establish witness intimidation. *See Commw. v. Knox,* 190 A.3d 1146, 1151 (Pa. 2018). Under this statute, all that is required is that the defendant had knowledge "that his conduct was likely to, impede, impair or interfere with the administration of criminal justice." *Commw. v. Beasley*, 138 A.3d 39, 48 (Pa Super. 2016) (quoting *Commw. v. Collington*, 615 A.2d 769, 770 (Pa. Super. 1992)).

Plaintiff does not dispute that he was aware that Doe had made allegations against his coworker, that he volunteered to the class that he had missed the previous class because he had been interviewed by the District Attorney's office relating to the sexual misconduct going on at the high school while Doe was seated in his classroom, or that he asked Plaintiff whether she was comfortable with the topic of "sexual assault" within earshot of another student. (Docket No. 57 at 2-3, 8). All of these events occurred mere days before Doe was set to testify against Ruggieri at his preliminary hearing. (Docket No. 55 ¶ 77). Plaintiff only disputes Doe's claim that he physically pointed at her when discussing his encounter with the District Attorney's office and references the statements of ten students who did not recall him doing so. Setting aside the well-established rule that an officer can give deference to a victim witness unless there is otherwise "independent exculpatory evidence or substantial evidence of a witness's own unreliability that outweighs the probable cause that otherwise exists," *Dempsey*, 834 F.3d at 477 (internal citation and quotation omitted), mere words can be sufficient to establish intimidation, *Doughty*, 126 A.3d at 957. Although the victim need not actually be intimidated, it is clear that Doe was affected by what happened in class as she notified Detective Focareta about what happened and was upset. Therefore, after reviewing the evidence in the light most favorable to the nonmoving party and in light of the minimal evidentiary hurdle required for probable cause, no reasonable jury could find facts that would lead to the conclusion that the reconstructed affidavit lacked probable cause.

15

Plaintiff also challenges the affidavit on the basis that it contains statements that Plaintiff had a criminal reputation and made statements against penal interest. (Docket No. 57 at 11). Defendants respond that Plaintiff misreads the Affidavit of Probable Cause. (Docket No. 54 at 3 n.2). It is the Court's opinion that Plaintiff's argument fails because it is unsupported by the evidence of record and Plaintiff simply relies on speculation and conjecture, which he cannot do in response to a motion for summary judgment. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

> The relevant section of the affidavit reads,
>
> WHY AFFIANT BELIEVES THE SOURCE OF INFORMATION
>
> Source is presumed reliable, i.e. other Police Officer, Eyewitness, Victim of Crime, etc.
>
> Source has given information in the past which has led to arrest and/or conviction
>
> Defendant's reputation for criminal activity
>
> This source made declaration against his/her penal interest to the above offense
>
> Affiant and/or other Police Officers corroborated details of the information

(Docket No. 53-9). Defendants presented evidence that these are boilerplate terms included on the affidavit form and that in order for one of these reasons to serve as a basis for the affidavit of probable cause, it would have been marked with an "X". (Docket No. 59). Plaintiff opines that this argument is not credible simply because two of the bases listed could have been used in support of the affidavit. (Docket No. 57 at 11). Despite having the opportunity to investigate his theory during discovery, Plaintiff proffered no evidence to support his contrary reading. At this juncture, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive summary judgment. *Betts*, 621 F.3d at 252. Hence, Plaintiff cannot avoid summary judgment on this basis.

B.  *Other Claims*

Because this Court has found no underlying violation under section 1983, each of Plaintiff's remaining claims fail. Specifically, Plaintiff's claims against Chief Armstrong, Lieutenant Conley, Officer Little, and the Borough of Plum Police Department are without merit because they are all premised on Plaintiff's assumption that Defendants lacked probable cause to believe that Plaintiff committed the crime of witness intimidation. A reasonable jury could not make that finding. Additionally, as to Chief Armstrong and the supervising officer, the law is well-established that a section 1983 claim does not impute liability on a respondeat superior liability theory. *See Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir. 1989) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)) ("A 'person' is not the 'moving force behind the constitutional violation' of a subordinate, unless that 'person'—whether a natural one or a municipality—has exhibited deliberate indifference to the plight of the person deprived"). Similarly, Plaintiff's *Monell* claim against the Borough of Plum is without merit because it is derivative in nature. *See Mills v. City of Harrisburg*, 350 F. App'x 770, 773 n.2 (3d Cir. Oct. 30, 2009) ("Absent an underlying constitutional violation by an agent of the municipality, [. . .] the municipality itself may not be held liable under § 1983"); *Jackson v. City of Pittsburgh*, No. CIV.A. 07-111, 2011 WL 3443951, at *27 (W.D. Pa. Aug. 8, 2011), *aff'd sub nom. Jackson v. City of Pittsburgh Pa.*, 492 F. App'x 297 (3d Cir. 2012) ("It is well-established that Plaintiff's § 1983 claim against the City of Pittsburgh under *Monell* is 'derivative' in nature"); *Kelley v. O'Malley*, 328 F. Supp. 3d 447, 462 (W.D. Pa. 2018). Accordingly, each of Plaintiff's claims cannot survive Defendants' motion for summary judgment.

C.  *Qualified Immunity*

Defendants alternatively contend that they are entitled to qualified immunity from suit. (Docket No. 54 at 20). Plaintiff argues that Defendants are not entitled to qualified immunity because Detective Focareta knew that the affidavit contained false information. (Docket No. 57 at 17). This Court once again agrees with Defendants' position.

Government officials are protected from civil liability on the basis of qualified immunity so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, ––– U.S. –––, 136 S.Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S 223, 231 (2009)). Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 162 (3d Cir. 2017) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Government officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, ––– U.S. –––, 138 S. Ct. 577, 589 (2018) (internal quotation marks and citation omitted). Therefore, in order to prevail, a plaintiff must show that the official both violated a federal right and the federal right was clearly established at the time the officer acted. "Although courts performing a qualified immunity analysis should analyze the specific conduct of each defendant," because Plaintiff has asserted that the individual Defendants acted in concert, the Court may consider the government officials' actions together. *Cole v. Encapera*, Civ. Act. Nos. 17-2883, 17-2884, 17-2992, 2018 WL 6822298, at *2 (3d Cir. Dec. 28, 2018).

18

As to the first prong, this Court has already rejected the factual predicate for Plaintiff's argument that he has endured a constitutional violation.[3] Because a finding of probable cause is a complete defense to a constitutional claim and entitles a defendant to qualified immunity, *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016), and no reasonable jury could find that probable cause did not exist in the instant case, Plaintiff's claim fails and Defendants are entitled to qualified immunity.

Similarly, as to the second prong, Plaintiff has failed to meet his burden to demonstrate that the constitutional rights allegedly violated by Defendants were "clearly established" at the time Plaintiff was arrested. *See id.* Indeed, Plaintiff has not pointed to any authority (in this Circuit, the Supreme Court or other Circuits), to support his contention that he sustained a constitutional violation let alone one that was clearly established. Accordingly, this Court holds that Defendants are entitled to qualified immunity.

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgement is granted.

An appropriate Order follows.

*/s Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: January 25, 2019

cc/ecf: All counsel of record.

---

[3] An officer who obtains a warrant "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *See Malley v. Briggs*, 475 U.S. 335, 343 (1986). Thus, qualified immunity applies provided that "a reasonably well-trained officer in [the defendants'] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id.* at 345.